UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOHN GEORGE KENNEDY, IV,

    Plaintiff,

v.                                          Case No:   8:16-cv-1392-T-MRM

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## OPINION AND ORDER

This cause comes before the Court on Plaintiff John George Kennedy, IV's Complaint (Doc. 1) filed on June 2, 2016. Plaintiff seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claims for a period of disability and disability insurance benefits. The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda in support of their positions. For the reasons set out herein, the decision of the Commissioner is **REVERSED AND REMANDED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**I.**     **Social Security Act Eligibility, Procedural History, the ALJ's Decision, and Standard of Review**

    **A.**     **Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A); 20 C.F.R. § 404.1505. The impairment must be

severe, making the claimant unable to do his previous work, or any other substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505 - 404.1511. Plaintiff bears the burden of persuasion through step four, while the burden shifts to the Commissioner at step five. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

### B. Procedural History

On December 11, 2012, Plaintiff filed an application for a period of disability and disability insurance benefits asserting an onset date of December 7, 2008. (Tr. at 11, 201). Plaintiff's application was denied initially on February 8, 2013 and upon reconsideration on April 19, 2013. (Tr. at 11, 110, 132). A hearing was held before Administrative Law Judge ("ALJ") Margaret Craig on October 6, 2014. (Tr. at 26-61). The ALJ issued an unfavorable decision on January 9, 2015. (Tr. at 8-25). The ALJ found Plaintiff not to be under a disability from December 7, 2008 through the date of the decision. (Tr. at 20).

On April 7, 2016, the Appeals Council denied Plaintiff's request for review. (Tr. at 1-6). Plaintiff filed a Complaint (Doc. 1) in this Court on June 2, 2016. Defendant filed an Answer (Doc. 8) on August 9, 2016. The parties filed memoranda in support. (Docs. 14, 19). The parties consented to proceed before a United States Magistrate Judge for all proceedings. (*See* Doc. 12). This case is ripe for review.

### C. Summary of the ALJ's Decision

An ALJ must follow a five-step sequential evaluation process to determine if a claimant has proven that he is disabled. *Packer v. Comm'r of Soc. Sec.*, 542 F. App'x 890, 891 (11th Cir. 2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).[1] An ALJ must determine

---

[1] Unpublished opinions may be cited as persuasive on a particular point. The Court does not rely on unpublished opinions as precedent. Citation to unpublished opinions on or after January 1,

whether the claimant:  (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) has the residual functional capacity ("RFC") to perform his past relevant work; and (5) can perform other work of the sort found in the national economy. *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004).  The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five.  *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

The ALJ found that Plaintiff met the insured status requirements through September 30, 2017.  (Tr. at 13).  At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 7, 2008, the alleged onset date.  (Tr. at 13).  At step two, the ALJ found that Plaintiff suffered from the following severe impairments through the date last insured:  "[c]ognitive and mood disorders secondary to traumatic brain injury."  (Tr. at 13).  At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart. P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526).  (Tr. at 14).

Based on the evidence, the ALJ determined that Plaintiff had the RFC to perform "less than the full range of light work as defined in 20 CFR 404.1567(b)."  (Tr. at 16).  Specifically, the ALJ found:

> [A]lthough the claimant can lift and carry twenty pounds occasionally and ten pounds on a frequent basis along with standing and/or walking and sitting for six hours in each eight-hour timeframe, he is limited to frequent climbing of ramps and stairs and he is precluded from climbing ladders, ropes and scaffolds. In addition, the claimant is limited to frequent balancing, stooping, kneeling and crouching and

---

2007 is expressly permitted under Rule 31.1, Fed. R. App. P.  Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules.  11th Cir. R. 36-2.

to occasional crawling. Moreover, the claimant must avoid concentrated exposure to extreme heat and hazards and he is limited to the performance of simple, routine, repetitive tasks requiring no more than occasional contact with co-workers and supervisors and requiting no more than incidental contact with the general public. Finally, the claimant can tolerate no more than little or gradual change in the workplace.

(Tr. at 16).

At step four, the ALJ determined that Plaintiff is unable to perform any past relevant work. (Tr. at 18). Specifically, a vocational expert ("VE") testified:

[Plaintiff] has past relevant work experience as a heavy, unskilled landscape laborer, (DOT# 408.687-014), a light, skilled locksmith, (DOT# 709.281-010), a heavy, semi-skilled retail stock clerk, (DOT# 299.367-014), a medium, skilled awning maker and installer, (DOT# 869.481-010), a heavy, skilled solar energy installer, (DOT# 637.261-030), a [] medium, semi-skilled brake operator, (DOT# 619.685-026), a medium, unskilled industrial cleaner and, as a medium, unskilled auto detailer, (DOT# 915.687-034).

(Tr. at 18).[2] The VE testified that a hypothetical worker with Plaintiff's RFC "would not be able to perform any of the past relevant work ascribed to the claimant on a sustained basis." (Tr. at 18-19). The ALJ stated that "[t]he testimony of the vocational expert is credited for the purposes of this decision." (Tr. at 19). Thus, the ALJ found that Plaintiff is not able to perform past relevant work. (Tr. at 19)

At step five, considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Tr. at 19). Specifically, the ALJ asked the VE whether jobs exist in the national economy for an individual with the Plaintiff's age, education, work experience, and RFC. (Tr. at 19). The VE testified:

[T]he individual would be able to perform the requirements of representative occupations such as light, unskilled housekeeper and cleaner, (DOT# 323.687-014), (7,000 jobs in Florida; 90,500 jobs in the national economy), a light, unskilled

---

[2] "DOT" is an acronym for the *Dictionary of Occupational Titles*.

4

laundry folder, (DOT# 369.687-018), (2,000 jobs in Florida; 25,000 jobs in the national economy), or, as a light, unskilled mail clerk, (DOT# 209.687-026), (1,700 jobs in Florida; 17,000 jobs in the national economy).

(Tr. at 19).

Pursuant to Social Security Ruling ("SSR") 00-4p, the ALJ determined that the VE's testimony was consistent with the information contained in the *Dictionary of Occupational Titles*. (Tr. at 20). Based on the testimony of the VE and considering the Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. (Tr. at 20). Thus, the ALJ concluded that a finding of "not disabled" was appropriate under the rules. (Tr. at 20).

Accordingly, the ALJ concluded that Plaintiff was not under a disability from December 7, 2008 through the date of the decision. (Tr. at 20).

### D. Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. §405(g). Substantial evidence is more than a scintilla; *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that "the evidence preponderates against" the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine reasonableness of factual findings).

## II. Analysis

Plaintiff raises two issues on appeal. First, Plaintiff contends that the Commissioner erred in failing to respond to Plaintiff's subpoena requests. (Doc. 14 at 6). Second, Plaintiff contends that the Commissioner did not properly weigh the medical opinions of Dr. Kathleen Carroll and Dr. Paul Winters. (*Id.* at 12). The Court addresses the issues below beginning with the ALJ's review of the opinion evidence.

### A. The ALJ's Review of the Opinion Evidence

#### 1. Legal Standards

Medical opinions are statements from physicians, psychologists, or other acceptable medical sources that reflect judgments about the nature and severity of impairments, including symptoms, diagnosis and prognosis, what a claimant can still do despite impairments, and physical or mental restrictions. 20 C.F.R. § 404.1527(a)(2). When evaluating a medical opinion, the factors an ALJ must consider include: (1) whether the doctor has examined the claimant; (2) the length, nature, and extent of a treating doctor's relationship with the claimant; (3) the medical evidence and explanation supporting the doctor's opinion; (4) how consistent the doctor's

opinion is with the record as a whole; and (5) the doctor's specialization. *Denomme v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x 875, 877 (11th Cir. 2013) (citing 20 C.F.R. §§ 404.1527(c), 416.927(c)).

An ALJ is required to consider every medical opinion. *Bennett v. Astrue*, No. 3:08-cv-646-J-JRK, 2009 WL 2868924, at *2 (M.D. Fla. Sept. 2, 2009) (citing 20 C.F.R. §§ 404.1527(d), 416.927(d)). Additionally, the Eleventh Circuit has stated that an ALJ must state with particularity the weight given to different medical opinions and the reasons therefor. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). Otherwise, the Court has no way to determine whether substantial evidence supports the ALJ's decision, and the Court will not affirm simply because some rationale might have supported the ALJ's conclusion. *See id.* Nonetheless, an incorrect application of the regulations will result in harmless error if a correct application of the regulations would not contradict the ALJ's ultimate findings. *Denomme*, 518 F. App'x at 877-78 (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983)).

Further, the Eleventh Circuit has held that the opinion of a treating physician must be given substantial or considerable weight unless "good cause" is shown to the contrary. *Phillips*, 357 F.3d at 1240-41 (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). Good cause exists when: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Id.* Moreover, an "ALJ may reject any medical opinion if the evidence supports a contrary finding." *Lacina v. Comm'r, Soc. Sec. Admin.*, 606 F. App'x 520, 526 (11th Cir. 2015) (quoting *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987)).

### 2. Paul Winters, M.D.

Plaintiff states that he has had a long-standing, treating relationship with Dr. Winters. (*See* Doc. 14 at 20). Despite this treatment relationship, Plaintiff argues that the ALJ "did not properly address and weigh the opinions of Dr. Winters." (*Id.* at 24). In fact, Plaintiff notes that the ALJ did not expressly assign a weight to Dr. Winters' opinions. (*Id.* at 21).

Plaintiff specifically takes issue with the ALJ's treatment of two opinions given by Dr. Winters. Plaintiff first points to Dr. Winters' Treating/Examining Source Statement of Mental Capacity dated February 11, 2013, setting forth Plaintiff's symptoms and limitations. (*Id.*). Plaintiff contends that this opinion shows that he "was impaired understanding, remembering, and carrying out instructions, completing a normal workday and workweek without interruptions from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods, and responding appropriately to changes in a routine work setting." (*Id.* (citing Tr. at 447-49)). Additionally, Plaintiff points out that Dr. Winters opined that "Plaintiff was likely to be absent from work three or more times per month. (*Id.* (citing Tr. at 449)). Despite these conclusions, Plaintiff contends that the ALJ failed to discuss the Treating/Examining Source Statement of Mental Capacity whatsoever or explain why the opinion was not adopted. (*Id.* at 21, 23).

In addition to the treating source statement, Plaintiff points to additional conclusions Dr. Winters gave on March 20, 2014. (*Id.* at 20-21 (citing Tr. at 541-43)). Plaintiff points out that, at that time, Dr. Winters opined that Plaintiff's neurological condition had not changed. (*Id.* (citing Tr. at 541-43)). Additionally, Dr. Winters found abnormal cortical function, judgment, and insight, as well as difficulty with tandem gait. (*Id.* (citing Tr. at 543)). Further, Dr. Winters

8

opined that Plaintiff is "disabled from manual labor due to his ataxic gait and is impaired for other sedentary occupations due to his memory loss." (*Id.* at 21 (citing Tr. at 543)).

Plaintiff concedes that the ALJ expressly found Dr. Winters' March 20, 2014 conclusions to be inconsistent with the objective evidence. (*Id.* (citing Tr. at 18)). Nonetheless, Plaintiff contends that "[t]he ALJ failed to explain how the evidence was inconsistent with the opinion of Dr. Winters." (*Id.*). Thus, Plaintiff contends the ALJ's "remark is simply conclusory." (*Id.*). Furthermore, Plaintiff notes that the ALJ reasoned "Plaintiff's activities of daily living did not support [Dr. Winters'] opinion." (*Id.*). Plaintiff contends, however, that "the ALJ failed to draw a logical conclusion between those daily activities and Plaintiff's abilities in a work setting." (*Id.*). Plaintiff states that "[t]hese are two wholly different matters," and, thus, "the ALJ's reasons for implicitly rejecting the statement of Dr. Winters are not legally sufficient." (*Id.*).

In sum, Plaintiff contends that "at no point does the ALJ specifically state the weight afforded to Dr. Winters' statement nor to Dr. Winters' Treating/Examining Source Statement of Mental Capacity." (*Id.*). Thus, Plaintiff argues "the ALJ erred in not expressly addressing the conclusions of Dr. Winters." (*Id.* at 23 (citing *Markell v. Astrue*, No. 8:06-cv-1720-T-TBM, 2007 WL 4482245, at *3 (M.D. Fla. Dec. 19, 2007)). Moreover, Plaintiff argues that Dr. Winters' opinions are consistent with other opinions of record and contradict the ALJ's assessment of Plaintiff's RFC. (*Id.*). Thus, Plaintiff argues that, "pursuant to the regulations, the ALJ was at least obliged to explain why she ignored this opinion." (*Id.*).

Conversely, Defendant contends that the ALJ correctly evaluated Dr. Winters' opinion by finding that Dr. Winters' opinion was inconsistent with the record evidence. (Doc. 19 at 13). On this point, however, Defendant concedes that "the ALJ did not explicitly state that she gave 'no probative weight' to Dr. Winters' opinion." (*Id.*). Nonetheless, Defendant contends that "the

9

ALJ indicated that she rejected Dr. Winters' opinion for the same reasons, and based on the same evidence, that she rejected Dr. Carroll's opinion, as previously discussed in her decision." (*Id.* at 13-14 (citing Tr. at 18)). Specifically, Defendant notes that, after the ALJ discounted Dr. Carroll's opinion, the ALJ stated "[s]imilarly, the conclusions drawn by [Plaintiff's] treating neurologist and neuropsychologist that he is unable to perform sedentary work or manual labor . . . are inconsistent with the objective evidence discussed above." (*Id.* at 13 (citing Tr. at 18, 447-49, 543)). Thus, Defendant states that "[t]he ALJ was not required to re-recite her analysis of the same evidence in her decision." (*Id.* at 14).

Additionally, Defendant further concedes that "the ALJ did not refer to Dr. Winters' Medical Source Statement of Mental Capacity by name." (*Id.*). Nonetheless, Defendant states that "Dr. Winters' Source Statement and Dr. Carroll's Source Statement are collectively Exhibit 12F, which the ALJ referenced in her analysis." (*Id.* (citing Tr. at 17)). As a result, Defendant states that "the ALJ sufficiently provided good cause for affording no probative weight to the opinions of Dr. Carroll and Dr. Winters, and substantial probative weight to the opinions of the state agency medical and psychological experts." (*Id.* (citing Tr. at 18)).

As stated above, an ALJ must state with particularity the weight given to different medical opinions and the reasons therefor. *Winschel*, 631 F.3d at 1179. As Defendant concedes, however, the ALJ did not state with particularity the weight given to Dr. Winters' opinions. (*See* Tr. at 17-18). Thus, the ALJ clearly erred in this regard. *See Winschel*, 631 F.3d at 1179. Nonetheless, an incorrect application of the regulations will result in harmless error if a correct application of the regulations would not contradict the ALJ's ultimate findings. *Denomme*, 518 F. App'x at 877-78. In this instance, however, the Court cannot conclude that a correct

10

application of the regulations would not contradict the ALJ's ultimate findings. Thus, the Court cannot conclude the ALJ's error was harmless.

In coming to this conclusion, the Court finds its previous decision in *Markell v. Astrue* to be highly persuasive. *See* 2007 WL 4482245. In *Markell*, the Court reversed and remanded the Commissioner's decision when the ALJ failed to give an express statement as to why the opinion of a non-treating, examining doctor was not adopted. *Id.* at *4. The Court stated that it was reasonable to infer from the ALJ's decision the fact that the ALJ discredited the doctor's report. *Id.* Nonetheless, the Court found that the ALJ's reasons for discrediting the report were "not so easily inferred." *Id.* By way of example, the Court noted that the ALJ gave more weight to two nonexamining, reviewing doctors who, in principle, were entitled to less weight than an examining doctor. *Id.* (citing 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1) (2007)). The Court concluded that, "[a]t a minimum, the ALJ was obliged to explain this conclusion." *Id.* (citing *Lucas v. Sullivan*, 918 F.2d 1567, 1574 (11th Cir. 1990)). Thus, the Court found that, under the circumstances, "the ALJ was not at liberty to leave his conclusions about [the doctor's] report unexplained." *Id.* While the Court made no finding as to the weight that should be given to the doctor's assessment, the Court found that the case was appropriately remanded for further evaluation of the doctor's report by the ALJ and a clear statement as to the weight afforded to the doctor's assessment. *Id.* Moreover, the Court concluded that "[a]ll medical evidence appropriate for consideration by the ALJ at that time shall also be considered." *Id.*

The present case is analogous to *Markell*. Similar to *Markell*, the ALJ did not specifically state the weight given to a doctor's opinion, specifically Dr. Winters' opinion. (*See* Tr. at 18). Moreover, like *Markell*, it is reasonable to infer from the ALJ's decision the fact that the ALJ discredited Dr. Winters' conclusions. (*See id.*). Nonetheless, as in *Markell*, the ALJ's

11

reasons for doing so are "not so easily inferred." (*See id.*). Specifically, while the ALJ stated that Dr. Winters' "conclusions" were inconsistent with the objective evidence, the ALJ only expressly addresses Dr. Winters' March 20, 2014 conclusions. (*See* Tr. at 17-18). The ALJ never specifically discusses Dr. Winters' Treating/Examining Source Statement of Mental Capacity in making that conclusion. (*See* Tr. at 18). A review of Treating/Examining Source Statement of Mental Capacity, however, shows that the Statement is far more detailed and expansive than Dr. Winters' March 20, 2014 conclusions. (*Compare* Tr. at 447-49, *with* Tr. at 541-43). Moreover, the Treating/Examining Source Statement of Mental Capacity clearly shows Dr. Winters' opinion that Plaintiff has significant limitations, including that Plaintiff is unable to meet competitive standards in areas such as: remembering work-like activities; understanding and remembering short and simple instructions; maintaining attention for a two-hour segment; responding appropriately to changes in a routine work setting; and dealing with normal work stress. (Tr. at 448). Nonetheless, because the ALJ never specifically addresses the treating source statement or the conclusions set forth therein, it is unclear if the ALJ's reasons for finding that Dr. Winters' March 20, 2014 conclusions are inconsistent with the objective evidence can also be applied to Dr. Winters' conclusions in his Treating/Examining Source Statement of Mental Capacity.

Furthermore, as in *Markell*, the ALJ here apparently gave more weight to nonexamining, reviewing experts who are entitled to less weight than examining doctors. *See* 2007 WL 4482245, at *4 (citing 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1) (2007)). Dr. Winters is a treating physician, whose opinions are entitled to "special significance." SSR 96-8p, 1996 WL 374184, *7. As a treating physician, Dr. Winters' opinions are, in principle, entitled to more weight than even examining physicians. *See* 20 C.F.R. § 404.1527(c)(2) ("Generally, we give

more weight to medical opinions from your treating sources . . . ."). Thus, as in *Markell*, the Court concludes that, at a minimum, the ALJ was obliged to explain her conclusions and that, under the circumstances, the ALJ was not at liberty to leave her conclusions about Dr. Winters' opinion unexplained. *See id.*

In sum, the ALJ erred by failing to assign a weight to the opinion of Plaintiff's treating physician, Dr. Winters. *See Winschel*, 631 F.3d at 1179. Moreover, the Court cannot conclude that the error is harmless because a correct application of the regulations may contradict the ALJ's ultimate findings. *See Denomme*, 518 F. App'x at 877-78. Thus, the Court reverses and remands the decision of the Commissioner for further evaluation of Dr. Winters' opinions by the ALJ and a clear statement as to the weight afforded to Dr. Winters' opinions. *See id.* As in *Markell*, however, the Court specifically declines to make a finding as to the weight that should be given to Dr. Winters' opinions. *See id.* That decision is left to the Commissioner after a review of the entire medical evidence of record, which entire record is appropriate for consideration by the ALJ and should be considered at that time. *See id.*

### B. Plaintiff's Remaining Arguments

Plaintiff's remaining arguments focus on a number of issues that cannot be resolved until it is clear to the Court that the ALJ properly considered the entire medical evidence of record, including the opinion evidence. Because a re-evaluation of this evidence may impact the analysis of other elements of the ALJ's Decision, the Court finds that any ruling on Plaintiff's remaining arguments would be premature at this time. Moreover, remand will allow the parties to address any lingering issues related to Plaintiff's subpoena requests. Upon remand, the ALJ must reevaluate the entire medical evidence of record in evaluating Plaintiff's case.

**III.    Conclusion**

Upon consideration of the submissions of the parties and the administrative record, the Court finds that the decision of the ALJ is not supported by substantial evidence.

Accordingly, the Court hereby **ORDERS** that:

1) The decision of the Commissioner is **REVERSED AND REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for the Commissioner to reevaluate the medical evidence of record, including the opinion evidence.

2) The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions and deadlines, and close the case.

3) If Plaintiff prevails in this case on remand, Plaintiff must comply with the Order (Doc. 1) entered on November 14, 2012, in Misc. Case No. 6:12-mc-124-Orl-22.

**DONE AND ORDERED** in Fort Myers, Florida on September 27, 2017.

_____
MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties